IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FISHING POINT HEALTHCARE, LLC,

Plaintiff,

v. Civil Action No. 2:25-cv-482

THE CITY OF CHESAPEAKE, VIRGINIA; and THE CITY COUNCIL OF THE CITY OF CHESAPEAKE, VIRGINIA,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Fishing Point Healthcare, LLC ("Fishing Point"), challenges the termination of its application for a conditional use permit. That permit would allow Fishing Point to operate a facility providing inpatient alcohol and substance abuse recovery programs. The City of Chesapeake, Virginia and the City Council of the City of Chesapeake (collectively, "Chesapeake") filed a partial motion to dismiss Counts I and II of the Complaint for failure to state a claim. Dkt. No. 13. For the reasons set forth below, the Court concludes that while Fishing Point has not stated a claim as to Count I, Count II is adequately pled. Chesapeake's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Dkt. No. 13.

## I. BACKGROUND[1]

Fishing Point operates an alcohol and substance abuse recovery facility in Chesapeake. Dkt. No. 1 ¶¶ 2–3, 21. The facility is bounded on three sides by two public schools and a residential neighborhood. *Id.* ¶ 4. Fishing Point has provided outpatient alcohol and substance abuse recovery treatment programs at this location since it purchased the property in 2023. *Id.* ¶¶ 20–21. When the outpatient programs began, Chesapeake's zoning ordinances did not require a treatment center to obtain a permit to operate such programs in Fishing Point's zoning district. *Id.* ¶ 24. While outpatient treatment facilities were permitted by-right, development of an *inpatient* facility required a conditional use permit. Dkt. No. 1-2, at 65.

So, Fishing Point applied for a conditional use permit in 2024. Dkt. No. 1 ¶¶ 22, 49. Prior to submitting the application, Fishing Point met with the Mayor and City Staff to discuss the possibility of providing inpatient services. *Id.* ¶ 49. Following those meetings, and given the positive response, Fishing Point began upgrading its facility. *Id.* ¶¶ 50–51. Both Chesapeake's City Staff and Chesapeake's Planning Commission recommended that the City Council approve the conditional use permit with certain stipulations, which included prohibiting residents from joining the program if they were convicted of any violent crime. *Id.* ¶¶ 55, 59. Fishing Point also proffered that it would install surveillance cameras and security fences on the property. *Id.* ¶ 57.

After Fishing Point obtained a recommendation for approval from the Planning Commission, the Chesapeake Public Schools administration sent a letter to Chesapeake's Planning Director expressing the school administration's opposition to Fishing Point's application. *Id.* ¶¶ 60–62. The letter stated that "[t]he location of this facility in such close proximity to these

---

[1] The factual allegations forming the basis of Fishing Point's claims are set out as they are pled in their Complaint, construing the facts in the light most favorable to them. *See Ray v. Roone*, 948 F.3d 222, 226 (4th Cir. 2020).

schools presents a safety concern" and that "there is no instance where the school administration would support a rehabilitation facility adjacent to two schools." *Id.* ¶¶ 60, 62.

Fishing Point appeared before the City Council in November 2024. *Id.* ¶ 72. During the meeting, a few individuals expressed their opposition to Fishing Point's application, including a representative from the Chesapeake Public Schools. *Id.* ¶¶ 72–73. After the speakers finished, one councilmember moved to deny the application based on his concerns about having the potential residents located so close to two public schools. *Id.* ¶¶ 77, 80. The councilmember acknowledged that Fishing Point could still provide outpatient services at the facility, though he stated if given the opportunity he would have voted to deny them that right as well. *Id.* ¶ 77. Other councilmembers voiced their opposition to the application and similarly asserted that the facility's proximity to the schools was not safe. *Id.* ¶ 78. The City Council unanimously voted to deny Fishing Point's application for a conditional use permit. *Id.* ¶ 79. Shortly after the vote, a councilmember requested that City Staff provide a recommendation on modifying the zoning uses to make all alcohol and substance abuse facilities conditional uses near schools. *Id.* ¶ 81; Dkt. No. 1-2, at 169.

In February 2025, Fishing Point submitted a second application for a conditional use permit to allow for inpatient alcohol and substance abuse recovery care. Dkt. No. 1 ¶ 82. While the second application was pending, a Chesapeake zoning administrator issued notices of violation to individuals affiliated with Fishing Point because Fishing Point began operating on an inpatient basis without having the conditional use permit approved. *Id.* ¶¶ 84, 86; Dkt. No. 1-2, at 175. Fishing Point alleges that the zoning administrator's decision to issue the notices of violation while Fishing Point's second application was pending contravened Chesapeake's policy of delaying zoning enforcement proceedings while a landowner is in the process of applying for approval. Dkt.

No. 1 ¶ 83. The notice of violations state, “To correct this violation, a Conditional Use Permit must be obtained . . . .” Dkt. No. 1 ¶ 85; Dkt. No. 1-2, at 175. Fishing Point initially appealed the notices of violation but subsequently withdrew the appeal in order to pursue the approval of its conditional use permit application. Dkt. No. 1 ¶ 88.

In the months following Fishing Point’s submission of its second application, the City Council unanimously amended its zoning ordinances (“Zoning Ordinance Amendment”) to classify both inpatient and outpatient alcohol and substance abuse rehabilitation facilities as conditional uses in many districts. *Id.* ¶ 25; Dkt. No. 1-2, at 3–5. The Zoning Ordinance Amendment includes a provision which states that “no facility offering alcohol and substance abuse treatment shall be located or otherwise operate within 500 feet of any of property” that is used for a public or private school; childcare or day care center; public library; public park; public recreation or community center; or any property that is zoned or used for residential purposes (“Setback Provision”). Dkt. No. 1 ¶ 28; Dkt. No. 1-2, at 5–6. The City Council can reduce the distance in the Setback Provision to 250 feet if certain criteria are met. Dkt. No. 1 ¶ 29; Dkt. No. 1-2, at 6.

After the Zoning Ordinance Amendment was enacted by City Council, City Staff administratively terminated Fishing Point’s second application for a conditional use permit. Dkt. No. 1 ¶ 97. Chesapeake’s Principal Planner sent a letter to Fishing Point’s counsel noting that City Council could reduce the Setback Provision to 250 feet, but that such an option was “infeasible” because Fishing Point’s facility is surrounded on three sides by public schools and residential

properties. Dkt. No. 1-2, at 1. Chesapeake terminated the second application without a hearing. Dkt. No. 1 ¶ 97.

This lawsuit followed. Fishing Point brings four counts: a due process claim in Count I, an equal protection claim in Count II, a discrimination claim under the Americans with Disabilities Act in Count III, and a discriminatory housing practice claim under the Fair Housing Act in Count IV. Chesapeake filed a partial motion to dismiss arguing that Counts I and II should be dismissed for failure to state a claim under Rule 12(b)(6). The Motion is now fully briefed and ripe for disposition. The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J).

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint to determine whether a plaintiff has properly stated a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" with all allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.* at 555. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," and "where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation modified).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Id.*; *see also Twombly*, 550 U.S. at 555 (stating that a complaint "requires more than labels and conclusions, or a formulaic recitation of the elements of a cause of action") (citation modified). A court "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (citation modified).

## III. ANALYSIS

### A. Due Process Claim

Fishing Point argues in Count I that the Zoning Ordinance Amendment violates its substantive and procedural due process rights. The Court will consider each in turn.

#### 1. Substantive Due Process

Fishing Point contends that Chesapeake violated its substantive due process rights by impairing Plaintiff's substantive property right. Fishing Point alleges that a zoning administrator "ordered" Fishing Point's administrators to pursue a conditional use permit application in order to lawfully carry out its inpatient recovery practice, that Fishing Point did so "[i]n good faith reliance" on the order, and that as a result the second conditional use permit application "became a vested right." Dkt. No. 1 ¶¶ 85, 88, 111–13. Fishing Point argues that Chesapeake arbitrarily denied plaintiff due process when they departed from normal procedures and administratively terminated Fishing Point's second conditional use permit application without a hearing after City Council amended the Zoning Ordinance. Dkt. No. 16, at 9.

To adequately state a substantive due process claim in the zoning context, a plaintiff must "demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827 (4th Cir. 1995). The United States Court of Appeals for the Fourth Circuit has stated that "[t]his is a particularly high hurdle in the zoning context: 'it must be clear that the state's action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health . . . [or] public safety.'" *Clayland Farm Enters., LLC v. Talbot Cnty.*, 987 F.3d 346, 357 (4th Cir. 2021) (citation omitted).

Fishing Point does not allege a deprivation of its property but does allege a "substantive property interest to apply for a permit." Dkt. No. 16, at 8. To establish a substantive due process claim, a plaintiff must first show that it possessed a "cognizable property interest, rooted in state law." *L.M. Everhart Constr., Inc. v. Jefferson Cnty. Planning Comm'n*, 2 F.3d 48, 51 (4th Cir. 1993) (citation omitted). "The property interest must be more than a 'unilateral expectation'; it must be a 'legitimate claim of entitlement.'" *Id.* (quoting *Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir. 1993)). Without a cognizable property interest rooted in state law, "there is no need to reach the question of whether a purported deprivation was arbitrary or capricious." *Id.* (quoting *Gardner v. City of Baltimore Mayor*, 969 F.2d 63, 68 (4th Cir. 1992)).

Here, Fishing Point concludes that its right to the processing of the "application [for a conditional use permit] is a vested right" under Virginia Code § 15.2-2307. Dkt. No. 1 ¶¶ 99, 112. Virginia Code § 15.2-2307 provides in part that "a landowner's rights shall be deemed vested in a land use and such vesting shall not be affected by a subsequent amendment to a zoning ordinance when the landowner" obtains or relies in good faith on a "significant affirmative governmental

act." *Id.* at (A)(i)–(ii). The Code lists a series of potential "significant affirmative governmental acts" such as when "the governing body or board of zoning appeals has granted a special exception or use permit with conditions" or when "the zoning administrator or other administrative officer has issued a written order, requirement, decision or determination regarding the permissibility of a specific use or density of the landowner's property that is no longer subject to appeal and no longer subject to change, modification or reversal under subsection C of § 15.2-2311." *Id.* at (C)(iii), (vii). Fishing Point alleges that the zoning administrator's statement on the notices of violation that "[t]o correct this violation, a Conditional Use Permit must be obtained" constitutes an order to apply for a conditional use permit. Dkt. No. 1 ¶ 85; Dkt. No. 1-2, at 175; Dkt. No. 16, at 11.

Fishing Point's argument fails for several reasons. First, Fishing Point's alleged "vested right to fair processing of the second application," Dkt. No. 16, at 11, is not a vested land use right. The plain language of Virginia Code § 15.2-2307(A) provides that "a landowner's rights shall be deemed vested in a *land use*" that is currently nonconforming and that the right to engage in the specific nonconforming land use will not be affected by future zoning changes.[2] The statute does not provide for how conditional use permits must be processed nor does it create a right to have a conditional use permit application processed in a certain way. As such, the right asserted by Fishing Point—fair processing of its conditional use permit—is not a land use right.

Second, Fishing Point's interpretation of the zoning administrator's instruction—"[t]o correct this violation, a Conditional Use Permit must be obtained"—ignores the context and the

---

2 "A nonconforming use of a building or structure is, generally, 'a lawful use [of a building or structure] existing on the effective date of the zoning restriction and continuing since that time in non-conformance to the ordinance.'" *Bd. of Supervisors v. Cohn*, 821 S.E.2d 693, 698 (Va. 2018) (citation omitted).

plain language of the letter. At the time that Fishing Point submitted its second application for a conditional use permit, Fishing Point only possessed a vested right to provide outpatient rehabilitation services because that use was lawful at the time that Fishing Point purchased the property. Dkt. No. 1 ¶ 24. By providing inpatient services at the facility without a conditional use permit, Fishing Point was operating an unlawful nonconforming use; such use was unlawful even before the Zoning Ordinance Amendment was enacted. Dkt. No. 1-2, at 65. The notices of violation informed Fishing Point that the appropriate way to obtain lawful authority to practice the nonconforming use of operating an inpatient facility would be to apply for a conditional use permit and have that application accepted by City Council. *Id.* The notices did not state or imply that the second application would be processed in a particular way. The language cannot fairly be interpreted as an order but rather as a suggestion to Fishing Point of one potential way to remedy the unlawful nonconforming use.

In addition, even if the notices of violation could be interpreted as a written order, the "order" was not "regarding the permissibility of a specific use" of the property. Va. Code § 15.2-2307(C)(vii). Similar to the point above, the zoning administrator's "order" regarded a zoning application, not the use of the property. Consequently, the mere application for a conditional use permit, without approval by City Council, is nothing more than a "unilateral expectation" of property interest as opposed to a "legitimate claim of entitlement." *L.M. Everhart Constr.*, 2 F.3d at 51.[3] For these reasons, the zoning administrator's decision to issue notices of violation was not an affirmative act concerning the "permissibility of a specific use." Va. Code § 15.2-2307(C)(vii).

---

[3] Fishing Point does not argue that Chesapeake has infringed its ability to provide outpatient services at the facility, only that Chesapeake has essentially denied it the opportunity to acquire new property rights by expanding its already nonconforming use.

Finally, Fishing Point argues that Chesapeake's delay in ruling on the second conditional use application and violation of its own enforcement policies violated Fishing Point's substantive due process rights. Dkt. No. 1 ¶¶ 111, 113. Fishing Point cites to a 1995 case out of the Third Circuit for the proposition that "harassment [of a property owner] in their land development efforts" may rise to a substantive due process violation. Dkt. No. 16, at 8 (citing *Blanche Rd. Corp. v. Bensalem*, 57 F.3d 253, 268 n.15 (3d Cir. 1995)). However, the Third Circuit later held that the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), overruled the precedent articulated in *Blanche Road* and related cases, and made clear that only conduct which "shocks the conscience and violates the decencies of civilized conduct" will give rise to a violation of substantive due process. *Lewis*, 523 U.S. at 846 (citation modified); *see United Artists Theatre Cir. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003) (overruling *Blanche Road* and related cases to apply "the *Lewis* shocks-the-conscience test" in "a land use dispute").

Similarly, in the Fourth Circuit, a substantive due process violation in a land dispute "must be conscience shocking, in a constitutional sense." *Siena Corp. v. Mayor of Rockville*, 873 F.3d 456, 464 (4th Cir. 2017) (citation modified); *see also CMDS Residential, LLC v. Mayor of Baltimore*, 714 F. Supp. 3d 583, 620 (D. Md. 2024) ("The Fourth Circuit has explained that the due process clause applies to local zoning disputes in only the most egregious circumstances."). "The protection of substantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Sylvia*, 48 F.3d at 827 (quoting *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)); *see also Licari v. Ferruzzi*, 22 F.3d 344, 349–50 (1st Cir. 1994) (holding that a government's revocation of building permits, unauthorized

issuance of enforcement orders, and delays in the processing and approval of a developer's application for a permit did not shock the conscience).

Under this standard, the Court finds that Fishing Point has not adequately pled a substantive due process violation. Fishing Point alleges that Chesapeake violated its own policies by issuing notices of violation while Fishing Point was pursuing the approval of its second application and that Chesapeake intentionally delayed ruling on the second application until after the Zoning Ordinance Amendment had passed. Dkt. No. 1 ¶¶ 82–84, 98. These allegations, even in the light most favorable to Fishing Point, do not shock the conscience. Other courts have recognized that a failure to follow state law or established policies—even in bad faith—does not rise to the level of a substantive due process violation. *See J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010) ("The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." (citation omitted)). In addition, the allegation that Chesapeake intentionally delayed ruling on the second application does not shock the conscience because it was a rational government decision based on the opposition that Chesapeake received during the processing of the first application. *See CEnergy-Glenmore Wind Farm v. Town of Glenmore*, 769 F.3d 485, 488 (7th Cir. 2014) ("As far as the Constitution is concerned, popular opposition to a proposed land development plan is a rational and legitimate reason for a legislature to delay making a decision."). Moreover, Chesapeake ruled on the second conditional use application approximately five months after it was filed, which is comparable to the length of time in which Chesapeake ruled on the first application.[4] Based on

[4] Chesapeake appears to have ruled on Fishing Point's first application for a conditional use permit within five months of its filing. The exhibits to the Complaint show that Fishing Point's application was submitted on June 10, 2024, and denied on November 19, 2024. Dkt. No. 1-2 at

these allegations, the Court cannot find that Chesapeake's actions concerning Fishing Point's second conditional use permit shock the conscience in a way that would support a substantive due process claim.

In conclusion, Fishing Point fails to allege a violation of its substantive due process rights.

2. Procedural Due Process

Fishing Point also contends that Chesapeake violated its procedural due process rights by failing to provide adequate notice and hearing prior to terminating Fishing Point's second application for a conditional use permit. Dkt. No. 1 ¶¶ 113–14; Dkt. No. 16, at 14. "To establish a procedural due process violation under § 1983, plaintiffs must show (1) that they were deprived of a cognizable liberty or property interest (2) through some form of state action (3) with constitutionally inadequate procedures." *Todman v. Mayor of Baltimore*, 104 F.4th 479, 487 (4th Cir. 2024). As explained above, Fishing Point was not deprived of a cognizable property interest when its second application for a conditional use permit was denied. Therefore, Fishing Point's procedural due process rights were also not violated.

Chesapeake's Motion to Dismiss is therefore granted with respect to Count I.

**B. Equal Protection Claim**

Fishing Point argues in Count II that the Zoning Ordinance Amendment "arbitrarily treats Plaintiff's patients and therefore Plaintiff's use differently than other similarly situated individuals and facilities" in violation of the Equal Protection Clause of the Fourteenth Amendment. Dkt. No. 1 ¶¶ 116, 117. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living*

62, 66. Fishing Point does not allege that Chesapeake delayed its determination of the first conditional use application.

*Ctr.*, 473 U.S. 432, 439 (1985). To survive a motion to dismiss for an equal protection claim, Fishing Point must plead: 1) "that [it] was treated differently from others who were similarly situated" and 2) "that the unequal treatment was the result of discriminatory animus." *Equity in Ath., Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citations omitted). If the plaintiff satisfies these elements, then "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 542 (4th Cir. 2013) (citation omitted).

The Supreme Court has held that legislation affecting disabled populations must satisfy rational basis review. *See Bd. of Tr. v. Garrett*, 531 U.S. 356, 367 (2001) ("[T]he result of *Cleburne* is that States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational."). Under this level of scrutiny, the government's distinction between different groups does not violate the Equal Protection clause so long as it is "rationally related to a legitimate governmental purpose." *Cleburne*, 473 U.S. at 446. While the government is afforded significant latitude under rational basis review, the government "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Id.*

Fishing Point argues that its inpatient facility for individuals recovering from alcohol or substance abuse is similarly situated to Group Care Facilities and Residential Care facilities that serve individuals with psychiatric and mental disabilities. Dkt. No. 1 ¶¶ 42–48. Fishing Point alleges that Chesapeake arbitrarily treats Fishing Point differently than such facilities because those facilities are not subject to the prohibitions of the Setback Provision of the Zoning Ordinance Amendment. *Id.* ¶¶ 42, 46, 48, 100. Fishing Point argues that Chesapeake arbitrarily drew the distinction between individuals recovering from alcohol and substance abuse and individuals with

other mental and psychiatric disabilities, and that this distinction was based solely on unsubstantiated fears. *Id.* ¶¶ 103–06.

Based on the allegations made in the Complaint and taking those allegations in the light most favorable to Fishing Point, the Court finds that Fishing Point has stated an equal protection claim in its Complaint. First, the Setback Provision of the Zoning Ordinance Amendment singles out facilities that treat patients recovering from alcohol and substance abuse. *See* Dkt. No. 1 ¶ 28; Dkt. No. 1-2, at 5–6. The Setback Provision treats these facilities differently than the rest of the population (including other health care facilities that treat individuals with different types of mental or physical disabilities) by prohibiting only the placement of substance and alcohol abuse recovery facilities within 500 feet of certain buildings like schools or other public locations. *Id.* Other types of health care facilities are not covered by the Setback Provision. Consequently, based on the allegations in the Complaint, Fishing Point was treated differently from others who are similarly situated.

Chesapeake argues that Fishing Point did not satisfy the first element of the equal protection claim because it failed "to allege with any specificity a comparator that would permit this Court to infer differential treatment that would violate the Equal Protection clause." Dkt. No. 14, at 16. The Court disagrees and finds that at this stage of the proceedings Fishing Point has alleged enough to show that its alcohol and substance abuse rehabilitation facility is similarly situated to other health care facilities that treat patients with different types of physiological disabilities. *See Open Homes Fellowship, Inc. v. Orange Cnty.*, 325 F. Supp. 2d 1349, 1358 (M.D. Fla. 2004) ("[B]ut for the fact that Open Homes' residents are recovering drug and alcohol addicts, if Plaintiff was operating its Program as [a dormitory, daycare center, or club] it would be allowed in an R-3 zone as of right."). Both types of facilities treat individuals with psychological or

physiological disabilities, and both would need a conditional use permit to operate within the relevant zone in Chesapeake. But only Fishing Point—because it provides addiction recovery instead of another type of physiological or psychological care—is also restricted by the Setback Provision of the Zoning Ordinance Amendment. For purposes of a motion to dismiss, these allegations are sufficient for Fishing Point's equal protection claim.

Fishing Point has also adequately alleged that Chesapeake was motivated by a discriminatory intent to satisfy the second element of its equal protection claim. The Supreme Court's decision in *Cleburne* controls on this point. In *Cleburne*, a local government created a zoning ordinance that required group homes for individuals with mental disabilities to apply for a special use permit to operate in a residential zone. *Id.* at 447. The Supreme Court found in part that the city's ordinance was created because of "mere negative attitudes, or fear [that was] unsubstantiated by factors which are properly cognizable in a zoning proceeding." *Id.* at 448. Accordingly, the Supreme Court held that the city violated the Equal Protection clause when it refused to permit the group home for mentally disabled individuals in a residential zone. *Id.* at 450.

Here, Fishing Point makes many similar allegations as articulated in *Cleburne*. Specifically, Fishing Point contends that Chesapeake denied the first conditional use permit application because "recovering individuals could not be trusted near schools." Dkt. No. 1 ¶ 80. Fishing Point notes that during the City Council hearing on the first application, individuals stated that they feared that the facility's patients would be more likely to engage in violence or commit crimes near the schools.[5] *Id.* ¶¶ 73–74. One councilmember expressed during the hearing that if

---

[5] Both parties rely on the video of the November 19, 2024, City Council hearing and both parties contend that the Court may consider the contents of the video as a public record. *See* Dkt. No. 14, at 3–4 n. 4; Dkt. No. 16, at 6. The Court declines to consider the video in this Order to avoid converting its decision into a premature summary judgment ruling. *See* Fed. R. Civ. P. 12(d); *Pittman v. D.M. York*, No. 3:19-cv-336, 2021 WL 218723, at *3 (E.D. Va. Jan. 21, 2021)

given the opportunity to deny Fishing Point's ability to provide outpatient care, then he would have done so. *Id.* ¶ 77. Chesapeake also relied on a letter from the school administration which states that "there is no instance where the school administration would support a rehabilitation facility adjacent to two schools." Dkt. No. 1-2, at 61. In addition, Fishing Point also alleges that Chesapeake unnecessarily delayed issuing a ruling on the second application for a conditional use permit in order to rule against the application by creating the Zoning Ordinance Amendment. Dkt. No. 1 ¶ 98. Chesapeake also issued notices of violation to Fishing Point despite the fact that this allegedly contravened Chesapeake's policy of delaying enforcement proceedings while a zoning application is pending. *Id.* ¶¶ 82–84.

Taking these allegations as true and in the light most favorable to Fishing Point, the Court finds that the Complaint plausibly alleges that Chesapeake's decision was motivated out of a discriminatory intent. The allegations appear to show that Chesapeake's motivation was grounded in an unsubstantiated fear of those recovering from alcohol or substance abuse similar to the allegations made in *Cleburne*. *See also Pathways Psychosocial v. Town of Leonardtown*, 133 F. Supp. 2d 772, 783 (D. Md. 2001) (finding potential discriminatory intent where "the community opposition . . . appears to arise directly from fears founded in stereotypes about the mentally disabled"). The Setback Provision applies only to facilities that provide alcohol or substance abuse recovery, but it does not apply to other forms of rehabilitation centers that provide care to disabled individuals. Moreover, the Setback Provision was authored at the direction of City Council after hearing the unsubstantiated opinions and it was enacted only after Fishing Point attempted to

---

("Although both parties provide a characterization of what they believe the video shows, at this stage, there are no facts before the Court."). The Court relies solely on the allegations and exhibits attached to the Complaint.

reapply for a conditional use permit. The Court finds that Fishing Point has sufficiently alleged the existence of a discriminatory intent by Chesapeake.

Finally, for the reasons stated above, the Court finds that at this stage of the proceedings Fishing Point has alleged that Chesapeake's unequal treatment of Fishing Point's facility did not rationally relate to the stated goal of protecting the public. This analysis is once again controlled by the Supreme Court precedent in *Cleburne* and is guided by other district courts that have ruled in similar circumstances. *See Open Homes Fellowship*, 325 F. Supp. 2d at 1361 ("Any safety concern related to the men being recovering addicts is therefore based upon unfounded fear, speculation, and prejudice."). Chesapeake explained that its decisions to deny the condition use permit and to create the Zoning Ordinance Amendment were grounded in a concern for public safety. Dkt. No. 1 ¶ 77–78. But these safety concerns are not supported by any articulable facts such as prior incidents that occurred at Fishing Point's outpatient facility or by any previous cases of crimes involving rehabilitation or health care centers in Chesapeake. Instead, based on the allegations in the Complaint, the safety concerns appear to be a generalized fear about a group of people of which there was no actual evidence presented to support such fear. *See Sullivan v. City of Pittsburgh*, 620 F. Supp. 935, 944 (W.D. Pa. 1985) ("The City of Pittsburgh had no legitimate interest in excluding the instant class of handicapped persons in need of residential and rehabilitative services at the facilities in dispute due to opposition based on unfounded fear, speculation and prejudice.").

While the Court recognizes that rational basis review is a high hurdle for any plaintiff to overcome, the present Complaint makes sufficient allegations to find that Fishing Point has met this burden. Protecting the public—and specifically school children—from potential harm is unquestionably a legitimate government interest, but at this stage of the proceedings the Court

cannot say that the Zoning Ordinance Amendment's ban of inpatient alcohol and substance abuse rehabilitation centers within 500 feet of the locations listed in the Setback Provision is rationally related to upholding the interest of protecting the public. Accordingly, Fishing Point has stated a claim for an equal protection violation and Chesapeake's Motion to Dismiss is DENIED for Count II.

## IV. CONCLUSION

For the reasons stated above, Chesapeake's Motion to Dismiss, Dkt. No. 13, is GRANTED IN PART and DENIED IN PART. Count I of the Complaint is DISMISSED WITHOUT PREJUDICE.

It is so ORDERED.

/s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: August 28, 2026